IN THE UNITED STATES DISTRICT COURT OF NEBRASKA

| | | |
|---|---|---|
| JAMIE KAIPUST, SPECIAL ADMINISTRATOR OF THE ESTATE OF MARK S. KAIPUST, JR., Deceased, and SPECIAL ADMINISTRATOR OF THE ESTATE OF TAYLOR R. KAIPUST, Deceased. | ) ) ) ) ) ) ) | Case No. _____ |
| Plaintiff, | ) ) | **REMOVAL** |
| v. | ) ) | |
| CRITICAL SUPPLY SOLUTIONS, INC. and YORKWIND CRAWFORD, | ) ) ) | |
| Defendants. | ) ) | |

COMES NOW the Defendants, Critical Supply Solutions, Inc. ("Defendant CSS") and Yorkwind Crawford ("Defendant Crawford") (collectively "Defendants"), by and through their attorneys of record, and for the purpose of removing this cause of action to the United States District Court of Nebraska herby show the Court as follows:

1.    This matter is presently pending in the District Court of Lancaster County, Nebraska under Case No. CI 22-589.

2.    Plaintiff filed the Complaint in Case No. CI 22-589 on the 23rd day of February, 2022.  A true and correct copy of Plaintiff's Complaint is attached hereto as Exhibit B.

3.    Defendant CSS was served with Plaintiff's Complaint on the 15th day of March, 2022.  Defendant Crawford was served with Plaintiff's Complaint on the 1st day of April, 2022.

4.    Pursuant to 28 U.S.C. §1446(b)(3), Defendant CSS has thirty (30) days from the receipt of the Complaint, or until April 14, 2022, and Defendant Crawford has until May 1, 2022, to seek removal of the action to this Court, and as such this Notice of Removal is timely filed. (Exhibit H)

5.     Plaintiff is Jamie Kaipust, Special Administrator of the Estates of Mark S. Kaipust, Jr. and Taylor R. Kaipust.  *See* Exhibit B at ¶1.

6. Plaintiff is a resident of Sarpy County, Nebraska and was appointed Special Administrator of each Estate in Sarpy County, Nebraska. *See* Dockets of Estates in County Court of Sarpy County, Nebraska, Exhibits C & D.

7. Mark S. Kaipust Jr. and Taylor R. Kaipust were residents of Sarpy County Nebraska. *See* Exhibit B at ¶ 1.

8. Defendant Critical Supply Solutions is a Florida corporation with its principal place of business in Miami Beach, Florida, and is therefore a citizen of Florida. (Exhibit B at ¶¶3 & 7)

9. Defendant Yorkwind Crawford is a resident of the state of Florida (Exhibit B at ¶6)

10. Plaintiff does not plead a specific dollar amount in damages in her Complaint, however she seeks damages related to: a) General damages, including but not limited to, the physical pain and suffering immediately prior to Mark Kaipust's death; b) General damages, including but not limited to, the physical pain and suffering immediately prior to Taylor Kaipust's death; c) funeral and burial expenses for Mark Kaipust; d) funeral and burial expenses for Taylor Kaipust; e) expenses for transportation of Mark Kaipust's body for medical examination; f) expenses for transportation of Taylor Kaipust's body for medical examination; g) damages for the wife and surviving children of Mark Kaipust for his death; h) damages for the mother of Taylor Kaipust for his death. (Exhibit B at ¶51)

11. "When the complaint in a removal action does not specify the dollar amount in controversy, the court may make an independent appraisal of the monetary value of the claim." *Abdul Ali Al'Amin v. McDonald's Corp*., 8:01CV385, 2001 U.S. Dist. LEXIS 22523, at 4 (D. Neb. Aug. 21, 2001) (citing *Asten v. Sw. Bell Tel. Co*., 914 F. Supp. 430, 432 (D. Kan. 1996).

12. The removing party has the burden of proving that the amount in controversy exceeds the jurisdictional minimum. "The burden can be met by submitting proof that the plaintiff's verdict reasonably may well exceed the jurisdictional minimum, or if, on the face of the complaint, it is apparent that the claims are likely above that amount." *Kaufman v. Costco Wholesale Corp*., 571 F. Supp. 2d 1061, 1063 (D. Minn. 2008).

13. The inquiry in removal for purposes of jurisdiction is whether a fact finder might legally conclude that damages exceed $75,000. *Bell v. Hershey Co*., 557 F.3d 953, 959, (8th Cir. 2009).

14.     "The Eighth Circuit has stated: 'As we see it, the federal court has jurisdiction here unless, as a matter of law, . . . the amount of damages that [the plaintiff] could recover is somehow fixed below the jurisdictional amount, or no reasonable jury could award damages totaling more than $75,000 in the circumstances that the case presents.'" Moody Motor Co. v. RFJ Agencies, Inc., 2007 U.S. Dist. LEXIS 11099, *18-19, 2007 WL 496700 quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)

15.     In this case damages are sought for the two decedents' pre-death personal injuries; wrongful death damages of a surviving spouse; wrongful death damages of a mother; and wrongful death damages of Mark Kaipust's children are alleged and on the face of the Complaint it is apparent that damages sought will likely exceed the jurisdictional minimum.

16.     The obituary of Mark Kaipust states that he was 41 years old at the time of his death, had a Doctorate in Occupational Therapy and was an Assistant Professor at Creighton University. (Ex. E)

17.     The Institute of Education Sciences (IES) is the statistics, research, and evaluation arm of the U.S. Department of Education. It produces data on various aspects of post-secondary education through the National Center for Educational Statistics. According to data submitted by Creighton University male assistant professors who were non-medical staff made on average $75,603. U.S. Department of Education, National Center for Education Statistics, Integrated Postsecondary Education Data System, Creighton University (April 12, 2022, 3:21 PM), https://nces.ed.gov/ipeds/datacenter/institutionprofile.aspx?unitId=181002&goToReportId=6 (Ex. I)

18.     It is unknown at this time whether Mark Kaipust was also considered medical staff, but other more general statistics from the same data source show that when the exclusion of "non-medical staff" is removed from the data assistant professors at private non-profit institutions granting graduate and professional degrees on average make $94,544. U.S. Department of Education, National Center for Education Statistics, Trend Generator (Apr. 12, 2022, 3:18 PM), (Ex. J)

19.     No salary for Mark Kaipust was pled and no precise salary is currently known. However based on public information regarding the salaries of assistant professors at Creighton University, his salary for a single year would likely exceed the jurisdictional minimum for this

court and a fact finder when considering a pecuniary loss with regard to his alleged wrongful death might legally conclude that the Plaintiffs damages exceed $75,000.

20.     This matter also involves the death of a child and in addition to traditional money value damages, the Supreme Court of Nebraska has stated that in an action for wrongful death of a child, recoverable damages include parental loss of the child's society, comfort, and companionship. In the case of *Williams v. Monarch Transp., Inc.*, 238 Neb. 354, 359, 470 N.W.2d 751, 755 (1991), the Nebraska Supreme Court upheld a $250,000 verdict for pecuniary loss finding that "money value" of parental loss is not limited to, always equated with, or necessarily dependent on deprivation of the child's monetary contribution toward parental well-being but can be the society, care and attention of the parent's child.

21.     Wrongful death verdicts and reported settlements also demonstrate a fact finder might conclude the amount the amount in controversy could exceed $75,000.

22.     In a wrongful death action *Carroll E. Heatherly, et. al v. Midwest Specialized Transportation*, Docket Number, 8:01CV332 a jury returned a verdict of $4.6 million for the death of Margaret Heatherly who died in a collision and left a surviving husband and children. (Ex. F)

23.     Several wrongful death settlements reported in "The Prairie Barrister" (the magazine of the Nebraska Association of Trial Attorneys) indicate settlements exceeding the jurisdictional minimum for this court ranging from $200,000 to $600,000.  (Ex. G compilation of "Verdicts and Settlements" from Prairie Barrister Vol. 24, No. 4, Winter 2018; Vol. 25, No. 4, Fall 2019; Vol. 25, No. 4, Winter 2019; Vol. 27 No. 4, Winter 2021)

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00.

25.     Pursuant to 28 U.S.C. §1446(d), Defendant CSS will file a copy of this Removal with the Clerk of the District Court of Lancaster County, Nebraska, and will serve a copy of the same on Plaintiff.

26.     Pursuant to 28 U.S.C. §1446(a), copies of all process, pleadings and orders served upon Defendants to date are attached to this Notice as Exhibit "H".

27.     Defendants reserve the right to amend or supplement this Notice of Removal and reserve all defenses.

WHEREFORE, Defendants pray that the Court remove this action from the District Court of Lancaster, Nebraska to the United States District Court of Nebraska and for such other and further relief as the Court deems just and equitable in the premises.

Dated this 14th day of April, 2022.

CRITICAL SUPPLY SOLUTIONS, INC. and
YORKWIND CRAWFORD,

/s/ *Daniel F. Church*
DANIEL F. CHURCH, #24820
MORROW WILLNAUER CHURCH, LLC
8330 Ward Parkway, Suite 300
Kansas City, Missouri 64114
Telephone: (816) 382-1382
Facsimile:  (816) 382-1383
dchurch@mwcattorneys.com

*/s/ Julie A. Jorgensen*
JULIE A. JORGENSEN #20411
MORROW WILLNAUER CHURCH, LLC
1299 Farnam, Suite 900
Omaha, Nebraska 68102
Telephone: (402) 934-0100
jjorgensen@mwcattorneys.com

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of April, 2022, the foregoing document was served via the Electronic Filing System and email to:

Eric R. Chandler, #23313
Law Office of Eric R. Chandler, PC, LLO
319 South 17th Street, Suite 522
Omaha, Nebraska 68102-1911
eric@ericchandlerlaw.com

*/s/ Julie A. Jorgensen*
JULIE A. JORGENSEN #20411

EXHIBIT A

## IN THE UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMIE KAIPUST, SPECIAL ADMINISTRATOR OF THE ESTATE OF MARK S. KAIPUST, JR., Deceased, and SPECIAL ADMINISTRATOR OF THE ESTATE OF TAYLOR R. KAIPUST, Deceased. | ) ) ) ) ) ) | Case No. _____ |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| CRITICAL SUPPLY SOLUTIONS, INC. and YORKWIND CRAWFORD, | ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF JULIE A. JORGENSEN
## SELF-EXECUTING VERIFICATION
## [28 U.S.C. § 1746]

| | |
|---|---|
| STATE OF NEBRASKA | ) |
| | ) ss. |
| COUNTY OF DOUGLAS | ) |

I, Julie A. Jorgensen, hereby state as follows:

1.     I am one of the attorneys for Critical Supply Solutions, Inc., and Yorkwind Crawford in the above-captioned case. I am more than 19 years old, have no legal disabilities, and make this declaration with personal knowledge of the matters set forth.

2.     Attached to this Removal are true and correct copies of the following:

Exhibit B:     Complaint in Case CI 22 580, *Jamie Kaipust, Special Administrator of the Estate of Mark S. Kaipust, Jr., et al. vs. Critical Supply Solultions, Inc., et al.*

Exhibit C:     County Court Docket in Case PR 21 0000431, *The Estate of Mark S. Kaipust, Jr., Decased*

Exhibit D:     County Court Docket in Case PR 21 0000432, *The Estate of Taylor Kaipust*

Exhibit E:     Mark S Kaipust, Jr., Obituary obtained from the Heafey Hoffman Dworak Cutler Mortuaries & Crematory's website

Exhibit F:     Verdict Form for 8:01CV332

Exhibit G:     Sections of the cited Volumes of *The Prairie Barrister* verdicts and settlement

Exhibit H:     All process pleadings and orders served upon the defendant to date

Exhibit I:     Creighton Institution Profile

Exhibit J:     TrendGenerator-Table Assistant Professor Salary excel document as it appears converted to PDF for purposes of filing.

**I STATE UNDER PENALTY OF PERJURY THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF, THE FOREGOING IS TRUE AND CORRECT.**
**28 U.S.C. § 1746**

DATED:  April 14, 2022

Julie A. Jorgensen

2

EXHIBIT B

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | | |
|---|---|---|
| JAMIE KAIPUST, | ) | |
| SPECIAL ADMINISTRATOR | ) | |
| OF THE ESTATE OF MARK | ) | |
| S. KAIPUST, JR., Deceased, | ) | |
| and SPECIAL | ) | CASE NO. CI 22- 589 |
| ADMINISTRATOR OF THE | ) | |
| ESTATE OF TAYLOR R. | ) | |
| KAIPUST, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT and JURY** |
| | ) | **DEMAND** |
| v. | ) | |
| | ) | |
| CRITICAL SUPPLY | ) | |
| SOLUTIONS, INC. and | ) | |
| YORKWIND CRAWFORD, | ) | |
| | ) | |
| Defendants. | | |

COMES NOW Plaintiff, Jamie Kaipust, Special Administrator of both the Estate of Mark S. Kaipust, Jr., Deceased and the Estate of Taylor R. Kaipust, Deceased (hereinafter "Plaintiff"), and for her causes of action against Defendants, states as follows:

1.     At all relevant times herein, decedents, Mark S. Kaipust, Jr. and Taylor R. Kaipust, were residents of La Vista, Sarpy County, Nebraska.

2.     On October 20, 2021, Jamie Kaipust was appointed as Special Administrator of both the Estate of Mark S. Kaipust, Jr. and the Estate of Taylor R. Kaipust.

3.     Defendant, Critical Supply Solutions ("CSS"), was a corporation organized in the State of Florida and engaged in the business of providing interstate motor carrier services on the date of the wreck and acted by and through its employees, agents, and/or

representatives acting within the course and scope of their employment with CSS.

4.      CSS can be served, according to the Federal Motor Carrier Safety Administration, with a copy of the complaint and summons through its blanket company, Truckers Nationwide, Inc, with service upon its registered agent in the State of Nebraska: MH Squared, LLC, 840 2nd Street, Dodge, Nebraska 68633.

5.      CSS is registered with U.S. Department of Transportation under DOT number 1485385 and MC 559592.

6.      Defendant Yorkwind Crawford ("Crawford") is a resident of the State of Florida and can be served with a Summons and a copy of the Complaint at 15841 NE 14th Avenue, N. Miami Beach, Florida 33162.

7.      Upon information and belief, Defendant CSS is an interstate common carrier based out of Florida.

8.      The provisions of 49 CFR §§ 301-399, commonly referred to as the "Federal Motor Carrier Safety Regulations" or "FMCSR" are applicable to this case, and Defendants CSS and Crawford were subject to and were required to obey these regulations at the time of the wreck and at all relevant times prior to the wreck.

9.      Upon information and belief, at all relevant times hereto, CSS was the owner of the tractor operated by Crawford.

10.     Upon information and belief, at all relevant times hereto, CSS was the owner of the trailer operated by Crawford.

11.     Upon information and belief, at the time of the wreck, Crawford was an employee and/or agent of CSS.

12.     Upon information and belief, at all times relevant hereto, Crawford was a truck driver for CSS and was acting within the scope and course of the business of CSS.

13.     At all times relevant hereto, Defendant CSS was acting by and through its employees/agents and is responsible for the acts of those employees and agents pursuant to *respondeat superior*, agency,

negligent entrustment, negligent hiring of an independent contractor, or similar theory of law.

14.     At all times relevant hereto, the Defendants were acting in a joint enterprise.

15.     Upon information and belief, on or about September 4, 2021, Crawford was operating a tractor owned by CSS and pulling a trailer owned by CSS westbound on Interstate 80 near milepost 402 in Lincoln, Lancaster County, Nebraska.

16.     At the same time and place, Mark Kaipust, Jr. ("Mark") was operating his Chevrolet Colorado pickup truck ("Kaipust Vehicle") westbound on Interstate 80 ahead of where Crawford was located.

17.     Mark also had his 7 year-old son, Taylor Kaipust ("Taylor"), traveling with him as a passenger, as the two were on their way to the first Nebraska Football home game.

18.     At said time and place, Crawford crashed the CSS tractor he was operating into the rear of Mark's pickup truck at an extremely high rate of speed.

19.     The force from impact caused significant damage and resulted in the Kaipust Vehicle bursting into flames; the force also resulted in the deaths of both Mark Kaipust, Jr. and Taylor Kaipust.

20.     As a result of the negligence of the Defendants, individually or combined and concurring with the acts of the other Defendants, both Mark and Taylor suffered severe injuries ultimately resulting in their deaths.

21.     Yorkwind Crawford was, at all material times, operating a commercial tractor arising out of and in the course of his employment with CSS and transporting a CSS trailer.

22.     No act of Mark Kaipust, Jr. caused or contributed to cause this wreck.

23. No failure to act of Mark Kaipust, Jr. caused or contributed to cause this wreck.

## COUNT I – NEGLIGENCE OF CSS:

24.     All preceding statements and allegations of the complaint are incorporated and realleged as if expressly set forth herein.

25.     Regardless of the employment relationship, CSS is the registered owner of the tractor involved in this wreck and is therefore responsible for the acts of the driver of that vehicle.

26.     At all times relevant to this cause of action, CSS and Yorkwind Crawford were subject to and required to obey the minimum safety standards established by the Federal Motor Carrier Safety Regulations (FMCSR) (49 CFR §§ 301-399), either directly or as adopted by the Nebraska Revised Statutes (Neb. Rev. Stat. §75-363 through §75-368).

27.     Defendants will be shown at trial to have violated the Federal Motor Carrier Safety Regulations which constitutes negligence, including but not limited to:

        a.  §383        Commercial Driver's License Standards

        b.  §390        General

        c.  §391        Qualifications of Drivers

        d.  §392        Driving of Commercial Motor Vehicles

        e.  §393        Parts and Accessories Necessary for Safe Operation

        f.  §395        Hours of Service

28.     CSS was required to teach and train Yorkwind Crawford so that he was able to understand and obey the rules and regulations contained in the FMCSR.

29.     CSS was negligent in:

        a. hiring and/or contracting with Yorkwind Crawford to drive the tractor-trailer at issue;

        b. the training of Yorkwind Crawford on the FMCSR and Commercial Driver's Manual;

        c. failing to supervise Yorkwind Crawford while driving the tractor-trailer;

   d.  failing to train Yorkwind Crawford to properly drive
       the tractor-trailer;

   e.  entrusting Yorkwind Crawford with the tractor-trailer;

   f.  retaining Yorkwind Crawford to drive the tractor-
       trailer;

   g.  failing to conduct proper and required checks on the
       background of their employee, agent and/or contractor,
       Yorkwind Crawford; and

   h.  failing to exercise ordinary care to determine their
       employees' agents' and/or contractors' fitness for the
       task of driving a commercial vehicle interstate.

   30.    CSS had a duty to promulgate and enforce rules and
regulations to ensure its drivers and vehicles were reasonably safe
and negligently failed to do so.

   31.    CSS, through its agents and employees, knew, had reason
to know, or should have known by exercising reasonable care, about
the risks set forth in this complaint and that by simply exercising
reasonable care these risks would be reduced or eliminated. These
risks include, but are not limited to:

   a.  The risks associated with unsafe drivers;

   b.  The risks associated with failing to train drivers and
       other employees to obey the FMCSR;

   c.  The risks associated with failing to train drivers to
       follow minimum driving standards for commercial
       drivers;

   d.  The risks associated with failing to have adequate risk
       management policies and procedures in place for
       maintenance and safety;

   e.  Failing to ensure its routes could be driven within
       hours-of-service;

   f.  Requiring drivers to meet unrealistic driving goals
       which CSS knew, had reason to know, or should have
       known would cause its drivers to violate the hours-of-

5

service regulations and/or push vehicles with mechanical problems past the point they should have stopped driving;

g.  Failing to have policies and procedures in place to identify undertrained and unqualified drivers and employees;

h.  Failure to appropriately implement and enforce risk management policies and procedures to monitor and assess Yorkwind Crawford and other employees once hired;

i.  Failing to implement and follow a written safety plan;

j.  Failing to protect the members of the public, such as Mark Kaipust, Jr. and Taylor Kaipust, from the risks described above,

k.  Failing to use the composite knowledge reasonably available to CSS to analyze the data available to it to identify the risk, take steps to reduce or eliminate the risk, and to protect members of the public from that risk; and

l.  Failing to appropriately implement and enforce risk management policies and procedures to identify the risks described above.

32.  The negligence of CSS was a proximate cause of the deaths of both Mark Kaipust Jr. and Taylor Kaipust.

33.  As a result of the negligence of CSS, both Mark Kaipust, Jr. and Taylor Kaipust suffered serious injuries ultimately resulting in their deaths.

34.  CSS acted in a willful, wanton and reckless manner, which either alone, or combined and concurring with the actions of the other Defendant's acts of negligence, directly and proximately caused the wreck and the deaths of both Mark Kaipust, Jr. and Taylor Kaipust.

35.     As a result of the negligence of CSS, Plaintiff is entitled to recover damages for Mark Kaipust, Jr. and Taylor Kaipust's physical pain, mental suffering, wrongful death, and other economic and non-economic losses.

## COUNT II -
## NEGLIGENCE OF DRIVER YORKWIND CRAWFORD

36.     All preceding statements and allegations of Plaintiff's complaint are incorporated herein and realleged as if expressly set forth herein.

37.     At the time of the wreck, Yorkwind Crawford failed to exercise due care and was negligent in or more of the following ways:

   a.  In following too closely;
   b.  In failing to keep a proper lookout;
   c.  In violating the basic rules of speed;
   d.  In failing to keep his vehicle under reasonable control; and
   e.  In failing to stop his vehicle before crashing into the rear of the Kaipust Vehicle.

38.     At all times relevant hereto, Mark Kaipust, Jr. exercised reasonable care in operating his vehicle.

39.     The tractor-trailer driven by Yorkwind Crawford was driven with the permission and at the direction of CSS.

40.     The tractor-trailer driven by Yorkwind Crawford was driven in the course and scope of his employment with the business of CSS.

41.     Regardless of the employment relationship, CSS is the registered owner of the trailer involved in this wreck and is therefore responsible for the acts of the driver of that vehicle.

42.     In order to put the matter at issue, Plaintiff alleges that CSS was negligent in the hiring, supervision, training, and/or retention of Yorkwind Crawford and is responsible for the negligent entrustment of its tractor-trailer to Crawford's care, and these acts of

negligence, combined and concurring with the other acts of negligence of the Defendants, proximately resulted in the damages to the Plaintiff.

43.    At the time and place of this wreck, Yorkwind Crawford was generally negligent under the circumstances then and there existing in that he:

        a.  failed to operate his vehicle in a safe and prudent manner in view of the conditions which existed at the time of the wreck;

        b.  failed to operate his vehicle in a manner considerate of the safety and lives of the other persons lawfully on the road; and

        c.  such other actions or inactions that may be shown at a hearing or trial.

44.    Defendants' negligence proximately caused the wreck with the Kaipust Vehicle and the resulting damages, injuries and deaths.

45.    At the time and place of this wreck, Yorkwind Crawford was negligent in that he was violating one or more of the Nebraska State Statutes or Omaha City Ordinances; to include but not be limited to:

| | | |
|---|---|---|
| a. | Neb. Rev. Stat. § 60-6,140 | Following vehicles; restrictions |
| b. | Neb. Rev. Stat. § 60-6,185 | Basic rule; speed |
| c. | Neb. Rev. Stat. § 60-6,212 | Careless Driving |
| d. | Neb. Rev. Stat. § 60-6,213 | Reckless Driving |
| e. | Omaha Municipal Code § 36-131 | Negligent Driving |

46.    That CSS and Yorkwind Crawford were subject to the "Federal Motor Carrier Safety Regulations" 49 CFR §§ 301-399 either directly, or as adopted by the Nebraska Revised Statutes.

47.    That Defendants CSS and Yorkwind Crawford will be shown at trial to have violated the state and Federal Motor Carrier Safety Regulations, which constitutes negligence.

8

48.     Yorkwind Crawford acted in a willful, wanton and reckless manner, which either alone, or combined and concurring with the actions of the other Defendant's acts of negligence, directly and proximately caused the wreck and both Mark Kaipust, Jr.'s and Taylor Kaipust's resulting injuries and deaths.

49.     As a result of Yorkwind Crawford's negligence, Plaintiff is entitled to recover damages for both Mark Kaipust, Jr.'s and Taylor Kaipust's pain and suffering, wrongful death, and other economic and non-economic losses.

## DAMAGES

50.     All preceding statements and allegations of the complaint are incorporated herein and realleged as if expressly set forth herein.

51.     As a result of the negligence of Defendants, Plaintiff, as Special Administrator of the Estates of both Mark Kaipust, Jr. and Taylor Kaipust, has incurred the following damages:

    a.  General damages, including but not limited to, the physical pain and mental suffering immediately prior to Mark Kaipust, Jr.'s death;

    b.  General damages, including but not limited to, the physical pain and mental suffering immediately prior to Taylor Kaipust's death;

    c.  Funeral and burial expenses for Mark Kaipust, Jr. in an amount to be determined at trial;

    d.  Funeral and burial expenses for Taylor Kaipust in an amount to be determined at trial;

    e.  Expenses of transportation of Mark Kaipust, Jr.'s body and medical examination; and

    f.  Expenses of transportation of Taylor Kaipust's body and medical examination.

52.     As a direct and proximate result of the negligence of Defendants, Mark Kaipust, Jr.'s next of kin sustained damages for the wrongful death of their husband and father.  This action is brought to recover a money judgment for that wrongful death.

9

53.     As a direct and proximate result of the negligence of Defendants, Taylor Kaipust's next of kin sustained damages for the wrongful death of her son.  This action is brought to recover a money judgment for that wrongful death.

54.     Plaintiff maintains these wrongful death actions for the benefit of Decedents' only next of kin, Jamie Kaipust, Kayden Kaipust and Isaiah Kaipust.

55.     As set forth more fully in the facts herein above, each of the Defendants acted in a willful, wanton and reckless manner which either alone, or combined and concurring with the actions of the other Defendant's acts of negligence, directly and proximately caused the wreck and all of the damages alleged above.

56.     Defendants knowingly, intentionally recklessly, and/or willfully disregarded the Federal Motor Carrier Safety Regulations.

57.     Defendants' conduct constituted a conscious disregard for the life and safety of Mark Kaipust, Jr. and Taylor Kaipust and for the lives and safety of the motoring public generally, and these defendants are therefore liable to Plaintiff for all damages incurred.

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

a. Special damages in an amount not yet fully known payable to the Estate of Mark Kaipust, Jr.;

b. Special damages in an amount not yet fully known payable to the Estate of Taylor Kaipust;

c. General damages for the physical pain and mental suffering payable to the Estate of Mark Kaipust, Jr.;

d. General damages for the physical pain and mental suffering payable to the Estate of Taylor Kaipust;

e. Damages for the wrongful death of Mark Kaipust, Jr. for his surviving spouse and children who are his next of kin;

f. Damages for the wrongful death of Taylor Kaipust for his surviving mother who is his next of kin;

g. Interest as allowed by law;

       h.   Costs of suit and, to the extent permitted by law, attorney's fees; and

       i.   For all such further and general relief which this Court deems just and proper.

DATED this 23rd day of February, 2022.

                        JAMIE KAIPUST, SPECIAL ADMINISTRATOR OF THE ESTATE OF MARK S. KAIPUST, JR., Deceased, and SPECIAL ADMINISTRATOR OF THE ESTATE OF TAYLOR KAIPUST, Deceased, Plaintiff,

          By:  /s/   Eric R. Chandler
                Eric R. Chandler, #23313
                Law Office of Eric R. Chandler, PC, LLO
                319 South 17th Street, Suite 522
                Omaha, Nebraska 68102-1911
                (402) 933-6858 (telephone)
                (866) 929-7939 (facsimile)
                eric@ericchandlerlaw.com

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby requests a trial by jury of any and all causes of action alleged in the Complaint.

JAMIE KAIPUST, SPECIAL
ADMINISTRATOR OF THE ESTATE OF
MARK S. KAIPUST, JR., Deceased, and
SPECIAL ADMINISTRATOR OF THE
ESTATE OF TAYLOR KAIPUST,
Deceased, Plaintiff,

By:  /s/   Eric R. Chandler
Eric R. Chandler, #23313
Law Office of Eric R. Chandler, PC, LLO
319 South 17th Street, Suite 522
Omaha, Nebraska 68102-1911
(402) 933-6858 (telephone)
(866) 929-7939 (facsimile)
eric@ericchandlerlaw.com

Official Nebraska Government Website                              EXHIBIT C

# Nebraska Judicial Branch

## Case Summary

In the County Court of Sarpy County
The Case ID is  PR 21 0000431
           Mark S Kaipust Jr., Deceased
The Honorable Robert C Wester, presiding.
Classification: Special Administration
Filed on 10/20/2021
This case is Open as of 10/20/2021

## Parties/Attorneys to the Case

            Party                         Attorney
Deceased ACTIVE
    Mark S Kaipust Jr.
    8716 S. 101st St.
    LaVista          NE 68128
Petitioner ACTIVE
    Jamie Kaipust                    Eric R Chandler
    8716 S. 101st St.                319 S 17th Street #522
    LaVista          NE 68128        Omaha            NE 68102
                                     402-933-6858

## Court Costs Information

| Incurred By | Account | Date | Amount |
|---|---|---|---|
| Petitioner | Filing Fees | 10/20/2021 | $14.00 |
| Petitioner | NSC Education Fee | 10/20/2021 | $1.00 |
| Petitioner | Dispute Resolution Fee | 10/20/2021 | $0.75 |
| Petitioner | Indigent Defense Fee | 10/20/2021 | $3.00 |
| Petitioner | Uniform Data Analysis Fee | 10/20/2021 | $1.00 |
| Petitioner | J.R.F. | 10/20/2021 | $2.00 |

| Incurred By | Account | Date | Amount |
|---|---|---|---|
| Petitioner | Filing Fee/JRF | 10/20/2021 | $8.00 |
| Petitioner | Legal Aid/Services Fund | 10/20/2021 | $6.25 |
| Petitioner | Automation Fee | 10/20/2021 | $8.00 |

## Financial Activity

No trust money is held by the court
No fee money is held by the court

## Payments Made to the Court

| Receipt | Type | Date | For | Amount |
|---|---|---|---|---|
| 756338 | Electronic Trans | 10/20/2021 | Kaipust,Jamie, | $44.00 |
| | | | Filing Fees | $14.00 |
| | | | NSC Education Fee | $1.00 |
| | | | Dispute Resolution Fee | $.75 |
| | | | Indigent Defense Fee | $3.00 |
| | | | Uniform Data Analysis | $1.00 |
| | | | J.R.F. | $2.00 |
| | | | Filing Fee/JRF | $8.00 |
| | | | Legal Aid/Services Fun | $6.25 |
| | | | Automation Fee | $8.00 |

## Register of Actions

10/20/2021 Letters of Special Administrator
           Image ID   000999048C59

```
10/20/2021 Inf Appt of Spec Admin
           Image ID  000999051C59




10/20/2021 Waiver
           This action initiated by party Jamie Kaipust
   Voluntary Notice and Waiver of Appearance
           Image ID  N21293E56C59


10/20/2021 App-Appt Spec Admin/Inf Proceeding
           This action initiated by party Jamie Kaipust
           Image ID  N21293CWAC59
```

EXHIBIT D

Official Nebraska Government Website

# Nebraska Judicial Branch

## Case Summary

In the County Court of Sarpy County
The Case ID is  PR 21 0000432
                Taylor Kaipust, Deceased
The Honorable Robert C Wester, presiding.
Classification: Special Administration
Filed on 10/20/2021
This case is Open as of 10/20/2021

## Parties/Attorneys to the Case

| Party | Attorney |
|---|---|
| Deceased ACTIVE | |
| Taylor Kaipust | |
| 8716 S. 101st St. | |
| LaVista        NE 68128 | |
| Petitioner ACTIVE | |
| Jamie Kaipust | Eric R Chandler |
| 8716 S. 101st St. | 319 S 17th Street #522 |
| LaVista        NE 68128 | Omaha           NE 68102 |
| | 402-933-6858 |

## Court Costs Information

| Incurred By | Account | Date | Amount |
|---|---|---|---|
| Petitioner | Filing Fees | 10/20/2021 | $14.00 |
| Petitioner | NSC Education Fee | 10/20/2021 | $1.00 |
| Petitioner | Dispute Resolution Fee | 10/20/2021 | $0.75 |
| Petitioner | Indigent Defense Fee | 10/20/2021 | $3.00 |
| Petitioner | Uniform Data Analysis Fee | 10/20/2021 | $1.00 |
| Petitioner | J.R.F. | 10/20/2021 | $2.00 |

| Incurred By | Account | Date | Amount |
|---|---|---|---|
| Petitioner | Filing Fee/JRF | 10/20/2021 | $8.00 |
| Petitioner | Legal Aid/Services Fund | 10/20/2021 | $6.25 |
| Petitioner | Automation Fee | 10/20/2021 | $8.00 |

## Financial Activity

No trust money is held by the court
No fee money is held by the court

## Payments Made to the Court

| Receipt | Type | Date | For | Amount |
|---|---|---|---|---|
| 756341 | Electronic Trans | 10/20/2021 | Kaipust,Jamie, | $44.00 |
| | | | Filing Fees | $14.00 |
| | | | NSC Education Fee | $1.00 |
| | | | Dispute Resolution Fee | $.75 |
| | | | Indigent Defense Fee | $3.00 |
| | | | Uniform Data Analysis | $1.00 |
| | | | J.R.F. | $2.00 |
| | | | Filing Fee/JRF | $8.00 |
| | | | Legal Aid/Services Fun | $6.25 |
| | | | Automation Fee | $8.00 |

## Register of Actions

10/20/2021 Letters of Special Administrator
           Image ID  000999054C59

10/20/2021 Inf Appt of Spec Admin
          Image ID  000999057C59


10/20/2021 Waiver
          This action initiated by party Jamie Kaipust
   Voluntary Notice and Waiver of Appearance
          Image ID  N21293E5YC59

10/20/2021 App-Appt Spec Admin/Inf Proceeding
          This action initiated by party Jamie Kaipust
          Image ID  N21293DBYC59

EXHIBIT E





Home     Live Cast     About Us     Obituaries     Services     Plan Ahead     Grief & Healing     Funeral Products     Contact Us

# Mark S. Kaipust, Jr.

September 10, 2021



Mark Kaipust

**Mark S. Kaipust, Jr.**

**June 12, 1980 – September 4, 2021**

Loving husband, father, son, brother, uncle, grandson, nephew, cousin, and friend.

Survived by wife, Jamie; sons, Kayden and Isaiah; parents, Mary and Mark S. Kaipust, Sr.; brother, Jeff and Ashley and nieces, Memphis and Monroe; brother, Chris and Christopher Villarreal and nephew, Leo; mother and father-in-law, Vikki and Bob Pease; brothers-in-law Dave Pease (Kristi), Aron Pease (Jill); grandmother, Winnie Kaipust; numerous aunts, uncles, and cousins in the Meyers, Kaipust, Pease, and Pahl families.  Preceded in death by grandparents: Vic and Frances Meyers, Laurence Kaipust; infant sister, Sarah Lynn.

Mark was a genuinely loyal person who demonstrated great patience and a positive attitude.  He lived out his mission as a Christian by serving others with his many talents and abilities.  Mark was committed to advanced education and worked to achieve a Doctorate in Occupational Therapy from Creighton University where he contributed positively to the world of academia as an Assistant Professor at Creighton University.  He had a quick wit about him in his teaching and interactions with those close to him. Mark had years of experience coaching kids in sports who looked up to him.  He loved traditions and kept those with family and friends.  Mark loved his children and encouraged them to work hard and be well-rounded individuals.  He is in heaven now, enjoying that one-on-one time with his son, playing endless games of baseball and basketball.

The family will receive friends on Sunday, September 12th from 3pm to 5pm at Calvary Christian Church, 10104 Cedar Island Road So., Bellevue, NE.  FUNERAL SERVICE:  Monday, September 13th at 10am at Calvary Christian Church.  Following the Service, please join the family for a luncheon at Millard Social Hall.  At the discretion of the family, memorials will be donated to organizations throughout the community. Here is the link to the live stream of the celebration of life service:  https://calvary.ch/specialevent/

# 8 Comments

SUSAN K ZAJAC     September 10, 2021

We are so extremely sorry for your loss. You are in our thoughts and prayers.💔❤️🙏

Reply

MEGAN OTTE    September 12, 2021

I send my deepest condolences, I am extremely sorry for your loss. I do not know your family, I was in the accident Saturday and wanted to let you know I will continue to think and pray for you all you!
Megan

Reply

CINDY NOWACKI    September 11, 2021

So sorry to hear of your loss. I was a fellow sidewalk counselor with Winnie before we moved out of state. Sending our love and prayers.

Reply

SUE SANDER ERICKSON    September 11, 2021

Mary, Mark, and family, So very sorry for your devastating loss. I can't even comprehend the loss you must feel. Such precious lives lost. Our daughter in law was one of his former students in OT school at Creighton. She said"The only man we would happily show up early to labs for, and stay and just chat! A beautiful life lost way way too soon, we will miss you Dr. K!" And other OT students had similar comments. A testament to you both. Losing that little grandson makes my heart break for you, I could not even imagine. Our thoughts and prayers to his wife and other boys who have lost their husband and dad. God Bless you and bless them in heaven.

Reply

SHERRY WHITE    September 12, 2021

Mark was a great man and his passion of OT showed in everything he did. I had the pleasure of working with him on the RDSIS committee for the last two years. He was always genuine and made us smile. Heaven gained a soul too soon but heaven has gained a wonderful saint. Thank you for sharing him. May God continue to hold you close as you grieve during these times.

Reply

AMANDA WISE    September 12, 2021

I wish Mark's family, friends, colleagues, and students comfort and healing during this impossible time. The community will long remember Mark's light and gifts. Mark and Taylor's presence will me missed, and together we all mourn this tragic loss. Prayers for all.

Reply

MICHAEL S BENDON    September 13, 2021

Mark, Sr.... If words would help, I'd say them. Deepest condolences from a Prep '72 classmate.

~Mike Bendon

Reply

CINDY VANEK    September 18, 2021

Dear Jamie & Family, I'm so heartbroken for your loss. Wishing you strength & peace. You are very much in my thoughts and prayers.

Reply

## SIGN GUESTBOOK

Name *

Email *

Condolence

SEND CONDOLENCES

## SUBSCRIBE TO THE JOURNEY NEWSLETTER

Receive emails when we publish our monthly newsletter.

Enter Email        Subscribe

## PRE-PLANNING

QUESTIONS AND ANSWERS

### Heafey Hoffmann Dworak & Cutler
MORTUARIES & CREMATORY
OUR LEGACY OF SERVICE CONTINUES...



Our professional and caring staff is dedicated to working with your family to provide assistance in selecting high quality and affordable funeral services during a time of grief.

## TESTIMONALS

I wanted to take a moment and thank you again for the very nice service you performed for Iran's memorial. I had several people come up to me to say "what a wonderful funeral". It was a nice tribute to him.

– Alexander Davis

## CONTACT INFO

⌂ 7805 West Center Road, Omaha NE 68124

▯ (402) 391-3900

✉ info@heafeyheafey.com

◎ Map & Directions

### Bellevue Memorial
FUNERAL CHAPEL

### Logan Memorial
FUNERAL CHAPEL

Privacy Policy

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

06 APR -6 PM 5: 23

OFFICE OF THE CLERK

| | |
|---|---|
| CARROLL E. HEATHERLY, as<br>Independent Administrator of<br>the Estate of MARGARET M.<br>HEATHERLY, Deceased, and<br>CARROLL E. HEATHERLY,<br>Individually,<br><br>        Plaintiffs,<br><br>     v.<br><br>MIDWEST SPECIALIZED<br>TRANSPORTATION, and DAVID<br>GILBERTSON,<br><br>        Defendants.<br><br>     v.<br><br>STEVEN ALEXANDER,<br><br>    Third Party Defendant. | 8:01CV332<br><br>VERDICT FORM |

## 1) Plaintiff's claims against Midwest Specialized Transportation and David Gilbertson:

We, the jury empaneled to try this cause, do hereby

find in favor of

    ___X___ the plaintiff, Carroll E. Heatherly.

    _____ the defendants, Midwest Specialized

Transportation and David Gilbertson.

    If you find in favor of the defendants, your foreperson

should date and sign the verdict form, and that will conclude

your deliberations.

If your verdict is for the plaintiff, proceed to Question No. 2.

> **2) Midwest Specialized Transportation and David Gilbertson's claim against Steven Alexander:**

We, the jury empaneled to try this cause, to hereby find in favor of

_____X_____ Midwest Specialized Transportation and David Gilbertson.

_____ Steven Alexander

If your verdict is for Steven Alexander, proceed to Question No. 4.

If your verdict is for Midwest Specialized Transportation and Gilbertson, proceed to Question Nos. 3 and 4.

> **3) Allocation of Negligence:**
>
> What percent, if any, of the negligence was Midwest Specialized Transportation and David Gilbertson's?                         40 %
>
> What percent, if any, of the negligence was Steven Alexander's?                         60 %
>
>             The total negligence must add up to . . 100%

**4) Decisions regarding damages:**

a) Plaintiff's claim as Administrator of the Estate of Margaret Heatherly (See Instruction No. 19):

> For damages sustained by Carroll
> Heatherly and Thomas Heatherly,
> Brigid Heatherly, Margaret
> Heatherly and Patrick Heatherly:

$ 4,600,000.00

b) Plaintiff's individual claim for damages (See Instruction No. 21):

1) Economic damages:    $ 1,000,000.00

2) Non-economic damages: $ 1,000,000.00

DATED this 6 day of April, 2006.

FOREPERSON

## VERDICTS & SETTLEMENTS



# SETTLEMENTS

### $501,300
### Hotel Slip and Fall – Traumatic Head Injury
### Lancaster County District Court

Sean Schulze, Guardian of Marilyn Schulze,
an incapacitated person v. Marcus Lincoln Hotel, LLC
Docket No.: CI-14-3564
Date of Settlement: July 26, 2018
Plaintiff Attorneys: Dan Friedman, Steve Sael
Defense Attorneys: Torrey Gerdes, Ron Pezze

Plaintiff, a 54-year-old female, was a guest at the Cornhusker Marriott. After checking in and dropping things off in her guest room, she went to leave the hotel. Upon exiting the elevator in the lobby, the Plaintiff slipped on water and hit her head on the composite marble floor of the lobby. Plaintiff sustained a traumatic brain injury. Unusual Facts: No evidence of where water came from, how long it was there, or who created dangerous condition. Rushed and haphazard inspection of floors by employee minutes before plaintiff's fall led to District Court overruling defendant's Motion for Summary Judgment based on Schade v. County of Cheyenne, 254 Neb. 228, 575 N.W. 2d 622 (1998). Medicals: $1,118,792.11. Experts Used: Liability experts: Plaintiff – Zdenek Hejzlar, Florida. Defense – Terry Stentz, Ph.D., University of Nebraska. (18-002)

### $800,000
### Head-on Auto Collision – Multiple Injuries
### Hall County

Date of Settlement: August, 2017
Plaintiff Attorney: Jeffrey Cox

54-year-old female driver was injured in a head-on collision when defendant's vehicle crossed the centerline on a two-way highway. Plaintiff was working part-time as a cook at the local school cafeteria, earning $9.00 per hour. Plaintiff suffered an open right distal tibia-fibula, talus dislocation fracture; displaced left distal femur fracture; rib fractures, concussion, and abdominal injury. Surgery was required for right ankle/foot injuries and open reduction and internal fixation of left femur fracture. Three weeks of hospitalization followed the surgeries and Plaintiff was then mainly homebound for approximately three months. Treating surgeons assessed right lower extremity impairment at 40% (16% of whole person) and left lower extremity impairment at 12% (5% whole person). Coverage: $250,000 plus $1 million umbrella. Medicals: $290,000. Settlement Offer: Initial Demand, $1.25 million; Insurer's Initial Offer $525,000.00. (18-003)

### $290,000.00
### ($25,000 Liability + $265,000 UIM)
### Phelps County
### Auto/Pedestrian – Wrongful Death

Date of Settlement: September 2018
Plaintiff Attorney: Jeffrey Cox

86-year-old retired male pedestrian was struck by Defendant's vehicle as Plaintiff attempted to cross a city street/highway. Plaintiff was thrown into the car's windshield and then onto the street. Defendant was prosecuted, pled "no contest" to and was found guilty of motor vehicle homicide and careless driving. Plaintiff was unresponsive at the scene and taken to the local hospital where he was pronounced dead shortly after. His injuries included head trauma, clavicle fracture, rib fractures, tibia fractures, fibula fracture, and dislocated ankle. Unusual Facts: For a substantial period of time prior to the accident, Plaintiff's condition included: (1) macular degeneration resulting in substantially reduced vision and inability to drive a car, (2) dementia, and (3) reduced hearing capacity. Coverage: $25,000 liability coverage; $300,000/$500,000 UIM coverage. Medicals: $6,500. Settlement Offer: UIM insurer's initial offer: $250,000.00. (18-004)

THE PRAIRIE BARRISTER

Verdicts & Settlements    *(continued from page 14)*



# SETTLEMENTS

### $500,000 – Settlement
### Low Impact Collision –
### Low Back Intrathecal Hemorrhage
### Nebraska Workers' Compensation Court
### Acosta v. Acosta Trucking
### & Werner Construction
**Docket No.: Doc 217 No 1621**
**Date of Settlement: May 2019**
**Plaintiff Attorneys: Justin High, Erin Fox, Dan Fix**

Plaintiff is a Spanish speaking truck driver who was in a low impact collision that caused an intrathecal hemorrhage in his low back that went undiagnosed for several days. Unusual Facts: Plaintiff was employed by his extended family members who failed to maintain workers' compensation insurance on their employees. Direct employer Defendants alleged Plaintiff was an independent contractor with no factual support for that position. Experts Used: Dr. Byron Spencer, Dr. Santamaria, Dr. Bansal. Medicals: $572,013.25 not reduced per the fee schedule. Lost Wages: $52,000.00. (19-026)

### $200,000 – Settlement
### FTCA – Wrongful Death
### USDC District of Nebraska
### Johnson v. United States
**Docket No.: 4:16CV3193**
**Date of Settlement: May 2019**
**Plaintiff Attorneys: Justin High,**
**Frank Younes, Dan Wasson**

Decedent was a 20-year-old who had stolen a car, led police on a high-speed chase, and entered Offutt Air Force Base. His car was barricaded in and he was approached by two officers – one a highly trained Deputy, and one a member of the base security force. While further attempting to flee, he was shot and killed by the base security officer. The Deputy did not fire. Unusual Facts: Plaintiff was single with no children. He was addicted to opioid medication and estranged from his family. Medicals: $50,000. (19-027)

### $180,000 – Settlement
### Slip and Fall – Low Back and Hand Injury
### Nebraska Workers' Compensation Court
### Lopez v. Advance Services
**Docket No.: Doc 218 No 0961**
**Date of Settlement: April 2019**
**Plaintiff Attorneys: Justin High and Erin Fox**

Plaintiff was a Spanish speaking laborer who sustained injury to her low back and left hand when she slipped and fell on ice. Unusual Facts: Plaintiff was placed on MMI with no restrictions or impairment prior to seeking counsel. Medicals: $35,015. (19-028)

### $150,000 – Settlement
### Bilateral Carpal Tunnel and Thumb Arthritis
### Nebraska Workers' Compensation Court
### Vacek v. One Drake Place, LLC
**Docket No.: Doc 219 No 0555**
**Date of Settlement: June 2019**
**Plaintiff Attorney: Justin High**

Plaintiff was a nail technician. She developed bilateral carpal tunnel and bilateral thumb arthritis after 28 years of performing manicures. She underwent four surgeries and was restricted from performing her job. There was significant disagreement between the treating physicians about causation of the injuries and causation of the permanent restrictions. Unusual Facts: Using conservative estimates, Plaintiff performed manicures on 700,000 nails over the course of 28 years as a nail tech. The original treating physician opined that her work did not contribute to her thumb arthritis but did contribute to the carpal tunnel. He further opined that all of the Plaintiff's restrictions were attributable to the thumb arthritis and not the carpal tunnel. Plaintiff accepted this settlement against her attorney's advice. Experts Used: Dr. Murphy, Dr. Mickels, Dr. Thompson, Dr. Jones. Medicals: $78,000. (19-029)

THE PRAIRIE BARRISTER

## VERDICTS & SETTLEMENTS

 VERDICTS

 SETTLEMENTS

**$769,650 - Verdict**
**FELA – Carpel Tunnel Syndrome**
**& Trigger Fingers**
**District Court of Polk County Iowa**
**Denniston v. BNSF Railway**
**Date of Verdict: October 4, 2019**
**Plaintiff Attorneys: Corey Stull and Christa Israel**
**Defense Attorneys: Mike Thrall and Mitch Kunert**

Plaintiff, a 58-year-old man, worked for BNSF as a track inspector using an impact gun to repair track. The use caused him to develop CTS and Trigger Fingers. After surgery he developed a MRSA infection that caused him to be unable to complete his job duties but he was given no physician imposed work restrictions. He retired 4.5 years early due to his inability to grasp with his left hand due to the infection. He earned about $90,000 per year which included benefits. Plaintiff's injuries included bilateral carpal tunnel, trigger finger in left middle finger and right thumb and MRSA infection at the CTS surgical incision causing diminished ability to grasp with his left hand. There were no permanent restrictions and symptoms related to CTS and trigger fingers resolved. Plaintiff suffered continued pain and grip loss from the infection. Experts used: Plaintiff – Nicholas Bruggeman, orthopaedic surgeon; Stan Smith, economist; Terry Cordray, vocational rehabilitation. Defendant – Mark Melhorn, orthopaedic surgeon; Greg Weams, biomechanical engineer; Mark Erwin, economist. Unusual Facts: Defendant paid Dr. Melhorn more than $150,000 for his opinions and testimony. Mr. Weams was paid $40,000. Medicals: Not admissible under FELA. Lost wages: Mitigated gross lost wages (only net wage loss under the FELA) $144,000. Settlement Offer: $7,500. (19-034)

**$201,000 – Settlement**
**Semi Truck/Auto Collision – Wrongful Death**
**Lincoln County District Court**
**Estate of Torres v. Roehl Transport, Owens, and Woods**
**Date of Settlement: September 15, 2019**
**Plaintiff Attorney: Brock Wurl**

Decedent was a passenger in his own vehicle. Driver was in the right lane of a two-lane road northbound. Roehl Transport semi turned left into far-right lane to go northbound into path of decedent's vehicle. Decedent's vehicle veered to the left and clipped the rear of the semi, causing vehicle to roll. Decedent was 73-years-old and retired. He left a widow and three adult children. Medicals: $15,000. (19-035)

**$185,000 – Settlement**
**Workers' Compensation –**
**Neck & Back Injuries**
**Iowa Workers' Compensation Commission**
**Cates v. BCD Acquisition, Inc.**
**Docket No.: 5059836**
**Date of Settlement: August 2019**
**Plaintiff Attorney: Justin High**

Plaintiff was a laborer who was injured when an individual driving a forklift struck the Plaintiff in the upper back with a pallet causing neck and back injuries. Unusual Facts: Plaintiff had a recommendation for a surgical consultation, but treating physicians had concerns about Plaintiff's ability to withstand the recovery from a psychological perspective, so Plaintiff was sent to Dr. Arias. Dr. Arias opined that Plaintiff was not a surgical candidate because of the potential psychological issues. Plaintiff elected to take the settlement offer against his attorney's advice. Experts used: Drs. McClellan, West and Arias. Medicals: $12,000. (19-036)

(continued on page 16)

THE PRAIRIE BARRISTER

**Verdicts & Settlements**   *(continued from page 22)*



## SETTLEMENTS

### $550,000
### Auto Collision – Wrongful Death and Emotional Distress
### Hall County
**Date of Settlement: May 2021**
**Plaintiff Attorney: Steve Dowding**

Decedent, a 21-year-old male, was killed as a result of injuries sustained in an auto accident when he was struck from behind, causing his vehicle to flip and pinning him under his vehicle. He suffered blunt force trauma to his head and chest. His mother was traveling behind him and Defendant's vehicle and witnessed the accident and trauma. Settlement for $500,000 to Decedent's mother and father for wrongful death proceeds, and $50,000 to his mother for negligent infliction of emotional distress. Coverage: 1 million. Medicals: Nominal. Lost Wages: None. (21-006)

### $600,000
### Auto Collision – Wrongful Death
### Hall County
**Date of Settlement: June 22, 2021**
**Plaintiff Attorney: Steve Dowding**

Decedent, a 37-year-old male and father of three minor children, was killed in an accident where he was a passenger. There was no conscious pain and suffering. Defense claim of contributory negligence, assumption of risk due to alcohol consumption prior to accident. Plaintiff's visitation with his children was limited to supervised visits for a period of time. Coverage: $250,000 liability, excess policies from two other carriers are known. Medicals: $1,254. Funeral and related expenses, $11,102.20. Lost Wages: Projected loss of services in opinion by forensic economist David Rosenbaum. (21-007)

## VERDICTS & SETTLEMENTS

Please send in reports of your verdicts and settlements.
We welcome all reports, large or small verdicts and settlements.

**NATA@NEBRASKATRIAL.COM**

**P.O. Box 391247**
**Omaha, NE 68139**
**(402) 435-5526**



| Image ID:<br>D00644596D02 | **SUMMONS** | Doc. No.   644596 |
|---|---|---|

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln               NE 68508

Jamie Kaipust v. Critical Supply Solutions, Inc.

Case ID: CI 22      589

TO:  Critical Supply Solutions, Inc

**FILED BY**

Clerk of the Lancaster District Court
02/23/2022

You have been sued by the following plaintiff(s):

Jamie Kaipust

Plaintiff's Attorney:    Eric R Chandler
Address:                 319 S 17 St, #522
                         Omaha, NE 68102

Telephone:               (402) 933-6858

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Nebraska Supreme Court Rule 2-208 requires individuals involved in a case who
are not attorneys and representing themselves to provide their email address to
the court in order to receive notice by email from the court about the case.
Complete and return the attached form to the court if representing yourself.

Date:  FEBRUARY 23, 2022    BY THE COURT:    _Troy L Clerk_
                                                      Clerk

Page 1 of 2

Image ID:
D00644596D02

**SUMMONS**

Doc. No.    644596

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

      Critical Supply Solutions, Inc
      c/o MH Squared, LLC RA
      840 2nd Street
      Dodge, NE 68633

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

| SERVICE RETURN | Doc. No.   644596 |
|---|---|

```
            LANCASTER DISTRICT COURT
            575 S. 10th Street - 3rd Floor
            SEPARATE JUVENILE COURT-4th Floor
            Lincoln              NE 68508
To:
Case ID: CI 22     589 Kaipust v. Critical Supply Solutions, In
```

Received this Summons on _____,_____.  I hereby certify that on

_____, _____ at _____ o'clock __M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                      _____

Mileage ____miles         _____

   TOTAL            $ _____

Date: _____    BY: _____
                               (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

_____

Postage $ _____    Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

```
To: Critical Supply Solutions, Inc      From: Eric R Chandler
    c/o MH Squared, LLC RA                     319 S 17 St, #522
    840 2nd Street                             Omaha, NE 68102
    Dodge, NE 68633
```

## ATTACH RETURN RECEIPT & RETURN TO COURT

| Image ID:<br>D00644597D02 | **SUMMONS** | Doc. No.   644597 |
|---|---|---|

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln              NE 68508

Jamie Kaipust v. Critical Supply Solutions, Inc.

Case ID: CI 22     589

TO:  Yorkwind Crawford

**FILED BY**

Clerk of the Lancaster District Court
02/23/2022

You have been sued by the following plaintiff(s):

    Jamie Kaipust

Plaintiff's Attorney:    Eric R Chandler
Address:                 319 S 17 St, #522
                         Omaha, NE 68102

Telephone:               (402) 933-6858

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Nebraska Supreme Court Rule 2-208 requires individuals involved in a case who
are not attorneys and representing themselves to provide their email address to
the court in order to receive notice by email from the court about the case.
Complete and return the attached form to the court if representing yourself.

Date: FEBRUARY 23, 2022    BY THE COURT:    _Tracy L. Clerk_
                                             Clerk

Image ID:
D00644597D02

**SUMMONS**

Doc. No.    644597

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Yorkwind Crawford
        15841 NE 14th Ave
        N. MiamiBeach, FL 33162

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue,
and file with the court clerk proof of service within ten days after the signed
receipt is received or is available electronically, whichever occurs first.

## SERVICE RETURN

Doc. No.   644597

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln            NE 68508

To:
Case ID: CI 22    589 Kaipust v. Critical Supply Solutions, In

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                      _____

Mileage ____miles         _____

  TOTAL               $ _____

Date: _____     BY: _____
                                    (Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                                _____

Postage $ _____    Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

To: Yorkwind Crawford              From:  Eric R Chandler
    15841 NE 14th Ave                     319 S 17 St, #522
                                          Omaha, NE 68102
    N. MiamiBeach, FL 33162

# ATTACH RETURN RECEIPT & RETURN TO COURT

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI220000589
Transaction ID: 0018012991
Filing Date: 02/23/2022 01:36:50 PM CST

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

| | |
|---|---|
| JAMIE KAIPUST,<br>SPECIAL ADMINISTRATOR<br>OF THE ESTATE OF MARK S.<br>KAIPUST, JR., Deceased, and<br>SPECIAL ADMINISTRATOR<br>OF THE ESTATE OF TAYLOR<br>R. KAIPUST, Deceased,<br><br>          Plaintiff,<br><br>v.<br><br>CRITICAL SUPPLY<br>SOLUTIONS, INC. and<br>YORKWIND CRAWFORD,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CASE NO. CI 22- 589

**NOTICE OF SERVING DISCOVERY DOCUMENTS**

The undersigned hereby certifies that a true and correct copy of Plaintiff's Request for Admissions upon Defendant Critical Supply Solutions (First Set), Plaintiff's First Request for Interrogatories to Defendant Critical Supply Solutions and Plaintiff's Request for Admissions upon Defendant Yorkwind Crawford (First Set) were mailed by Certified United States Mail, to Critical Supply Solutions, Inc., Truckers Nationwide, Inc., c/o MH Squared, LLC, R.A., 840 2nd Street, Dodge, NE 68633 and Yorkwind Crawford, 15841 NE 14th Ave, N. Miami Beach, FL 33162 on this 23rd day of February, 2022.

JAMIE KAIPUST, SPECIAL ADMINISTRATOR OF THE ESTATE OF MARK S. KAIPUST, JR., Deceased, and SPECIAL ADMINISTRATOR OF THE

ESTATE OF TAYLOR KAIPUST,
Deceased, Plaintiff,


By: _____
Eric R. Chandler #23313
319 South 17th Street, Suite 522
Omaha, Nebraska 68102
402-933-6858
eric@ericchandlerlaw.com
Attorney for Plaintiff
ATTORNEY FOR PLAINTIFF



## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of February, 2022, I sent the above document via Certified United States Mail, postage prepaid and properly addressed to the following:


Critical Supply Solutions, Inc.
Truckers Nationwide, Inc.
c/o MH Squared, LLC , R.A.
840 2nd Street
Dodge, NE 68633

Yorkwind Crawford
15841 NE 14th Ave
N. Miami Beach, FL 33162



_____
Eric R. Chandler

## Certificate of Service

I hereby certify that on Wednesday, February 23, 2022 I provided a true and correct copy of the Notice-Serving Documents to the following:

Critical Supply Solutions, Inc service method: Certified Mail

Crawford,Yorkwind, service method: Certified Mail

Signature: /s/ Chandler,Eric Robert (Bar Number: 23313)

| Image ID:<br>D00646270D02 | **SUMMONS** | Doc. No.    646270 |

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln              NE 68508

Jamie Kaipust v. Critical Supply Solutions, Inc.

Case ID: CI 22      589

TO:  Critical Supply Solutions, Inc

**FILED BY**

Clerk of the Lancaster District Court
03/10/2022

You have been sued by the following plaintiff(s):

    Jamie Kaipust

Plaintiff's Attorney:    Eric R Chandler
Address:                 319 S 17 St, #522
                         Omaha, NE 68102

Telephone:               (402) 933-6858

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Nebraska Supreme Court Rule 2-208 requires individuals involved in a case who
are not attorneys and representing themselves to provide their email address to
the court in order to receive notice by email from the court about the case.
Complete and return the attached form to the court if representing yourself.

Date: MARCH 10, 2022      BY THE COURT:    _Tracy L Clerk_
                                                    Clerk

Image ID:
D00646270D02

**SUMMONS**

Doc. No.   646270

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

        Critical Supply Solutions, Inc
        c/o Julie Jorgensen
        1299 Farnam St Suite 900
        Omaha, NE 68102

BY:  Douglas County Sheriff
Method of service:   Personal Service


You are directed to make such service within twenty days after date of issue,
and show proof of service as provided by law.

| SERVICE RETURN | Doc. No.    646270 |
|---|---|

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln              NE 68508

To: Douglas County Sheriff
Case ID: CI 22     589 Kaipust v. Critical Supply Solutions, In

Received this Summons on _____,_____.  I hereby certify that on

_____, _____ at _____ o'clock __M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                      _____

Mileage _____miles        _____

     TOTAL            $ _____

Date: _____     BY: _____
                                       (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                                    _____

Postage $ _____     Attorney for: _____

The return receipt for mailing to the party was signed on _____, _____.

To: Critical Supply Solutions, Inc          From: Eric R Chandler
    c/o Julie Jorgensen                            319 S 17 St, #522
    1299 Farnam St Suite 900                       Omaha, NE 68102
    Omaha, NE 68102

## ATTACH RETURN RECEIPT & RETURN TO COURT

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI220000589
Transaction ID: 0018125192
Filing Date: 03/22/2022 09:32:51 AM CDT

## SERVICE RETURN

Doc. No.    646270

LANCASTER DISTRICT COURT
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln            NE 68508

To: Douglas County Sheriff
Case ID: CI 22      589 Kaipust v. Critical Supply Solutions, In

Received this Summons on _____,_____ . I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons

upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return        $ _____

Copy                         _____

Mileage _____miles         _____

  TOTAL                   $ _____

Date: _____     BY: _____
                                    (Sheriff or authorized person)

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,     Critical Supply Solutions, Inc.
TO THE PARTY: _____

At the following address: _____     c/o Julie Jorgensen

_____     1299 Farnam Street, Suite 900

_____     Omaha, NE 68102

on the ___10th__ day of ____March____ _____2022_____ , as required by Nebraska state law.

Postage $ _7.73_     Attorney for:     Eric R. Chandler #23313
                                       Plaintiff

The return receipt for mailing to the party was signed on _____March 15_, _2022_ .

To: Critical Supply Solutions, Inc          From: Eric R Chandler
    c/o Julie Jorgensen                           319 S 17 St, #522
    1299 Farnam St Suite 900                      Omaha, NE 68102
    Omaha, NE 68102

ATTACH RETURN RECEIPT & RETURN TO COURT

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Critical Supply Solutions, Inc.
Julie Jorgensen
MORROW WILLNAUR CHURCH LLC
1299 Farnam Street, Suite 900
Omaha, Nebraska 68102

9590 9402 7114 1251 9987 70

2. Article Number *(Transfer from service label)*

7021 1970 0000 7725 1168

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                           ☐ Addressee

B. Received by *(Printed Name)*  | C. Date of Delivery
M 202 CiG                        | 3|15|22

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

## Certificate of Service

I hereby certify that on Tuesday, March 22, 2022 I provided a true and correct copy of the Return-Summons/Alias Summons to the following:

Crawford,Yorkwind, service method: No Service

Critical Supply Solutions, Inc service method: No Service

Signature: /s/ Chandler,Eric Robert (Bar Number: 23313)

| Image ID:<br>D00647782D02 | **SUMMONS** | Doc. No.   647782 |

IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA
575 S. 10th Street - 3rd Floor
SEPARATE JUVENILE COURT-4th Floor
Lincoln             NE 68508

Jamie Kaipust v. Critical Supply Solutions, Inc.

Case ID: CI 22      589

TO:  Yorkwind Crawford

**FILED BY**

Clerk of the Lancaster District Court
03/28/2022

You have been sued by the following plaintiff(s):

    Jamie Kaipust

Plaintiff's Attorney:    Eric R Chandler
Address:                 319 S 17 St, #522
                         Omaha, NE 68102

Telephone:               (402) 933-6858

A copy of the complaint/petition is attached. To defend this lawsuit, an
appropriate response must be served on the parties and filed with the office of
the clerk of the court within 30 days of service of the complaint/petition. If
you fail to respond, the court may enter judgment for the relief demanded in the
complaint/petition.

Nebraska Supreme Court Rule 2-208 requires individuals involved in a case who
are not attorneys and representing themselves to provide their email address to
the court in order to receive notice by email from the court about the case.
Complete and return the attached form to the court if representing yourself.

Date: MARCH 28, 2022      BY THE COURT:   _Tracy L. Clerk_
                                          Clerk

```
Image ID:                  ┌─────────────────────────────┐
D00647782D02               │         SUMMONS             │                    Doc. No.    647782
                           └─────────────────────────────┘
```

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE
COMPLAINT/PETITION ON:

      Yorkwind Crawford
      Lancaster County District Crt, #20
      April 1, 2022 @ 11:00 am

BY:  Lancaster County Sheriff
Method of service:  Personal Service

You are directed to make such service within twenty days after date of issue,
and show proof of service as provided by law.

| SERVICE RETURN | Doc. No.    647782 |
|---|---|

```
               LANCASTER DISTRICT COURT
               575 S. 10th Street - 3rd Floor
               SEPARATE JUVENILE COURT-4th Floor
               Lincoln              NE 68508
To: Lancaster County Sheriff
Case ID: CI 22    589 Kaipust v. Critical Supply Solutions, In
```

Received this Summons on _____,_____. I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return        $ _____

Copy                        _____

Mileage _____miles          _____

   TOTAL              $ _____

Date: _____      BY: _____
                                      (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

                                      _____

Postage $ _____    Attorney for:  _____

The return receipt for mailing to the party was signed on _____, _____.

```
To: Yorkwind Crawford                From: Eric R Chandler
    Lancaster County District Crt, #20      319 S 17 St, #522
    April 1, 2022 @ 11:00 am                Omaha, NE 68102
```

# ATTACH RETURN RECEIPT & RETURN TO COURT

Filed in Lancaster District Court
*** EFILED ***
Case Number: D02CI220000589
Transaction ID: 0018176371
Filing Date: 04/01/2022 10:00:00 PM CDT

```
                    LANCASTER COUNTY SHERIFF'S OFFICE
                         Lincoln, Nebraska  68508
                          Process Service Return
       Of Sheriff's Paper # 203470 to LANCASTER County DISTRICT Court
   Document No: 647782              Case No: CI22 589

   _____
   Received           Returned       Service and Return   $  18.00
   03/28/2022         04/01/2022      Copy
   _____       Mileage
   Type of Process                    Miscellaneous
           SUMMONS                        Total Fees     $  18.00
   Copy of REG OF E-ADDR FOR SELF-RE
           COMPLAINT                  Paid by LAW OFFICE OF ERIC R CHAN
           PRAECIPE                   Attorney Code
                                      Witness Fee Paid     $
                                      Clerk Fee Paid       $
   =================================================================
   Plaintiff                         Defendant
   KAIPUST, JAMIE                    CRITICAL SUPPLY SOLU
   =================================================================

       Party Served: YORKWIND CRAWFORD
                     575 S 10TH ST              LINCOLN NE
                     SRVD ON 2ND FL HALL OF JUSTICE BLDG
       Service Type: PERSONAL
       Service Date: 04/01/2022 , 1047   By: T SCHROER
   -----------------------------------------------------------------
```

       I hereby certify that at the time and in the manner herein stated, I
   served the within writ, together with copies shown, on the herein named
   party(s) a true and certified copy thereof with all endorsements there
   on, or returned said writ unserved in the prescribed manner.
       All done in Lancaster County, Nebraska, as required by law.

                                      TERRY T. WAGNER, Sheriff
                              By /s/TRAVIS SCHROER

EXHIBIT I

# National Center for Education Statistics

## IPEDS Data Center

**Creighton University**
**UnitID**        181002
**OPEID**         00254200
**Address**       2500 California Plaza, Omaha, NE, 68178
**Web Address**   https://www.creighton.edu/

## Institution Characteristics

### General information: Academic year 2020-21

| | |
|---|---|
| UnitID | 181002 |
| Name | Creighton University |
| City | Omaha |
| State | NE |
| Web Address | https://www.creighton.edu/ |
| OPEID | 00254200 |
| Title IV Institution | Participates in Title IV federal financial aid programs |
| Control | Private not-for-profit |
| Level | Four or more years |
| Institution Category | Degree-granting, primarily baccalaureate or above |
| Carnegie Classification | Doctoral/Professional Universities |
| Award levels | Less than one year certificate |
| | One but less than two years certificate |
| | Associate's degree |
| | Bachelor's degree |
| | Postbaccalaureate certificate |
| | Master's degree |
| | Post-master's certificate |
| | Doctor's degree - research/scholarship |
| | Doctor's degree - professional practice |
| Religious Affiliation | Roman Catholic |
| Calendar System | Semester |
| Reporting Method | Student charges for full academic year and fall GR/SFA/retention rate cohort |
| Campus Setting | City: Large |
| Distance Learning | Offers undergraduate courses and/or programs |

## Admissions and Test Scores

### Number of applicants, admissions, and students enrolled: Fall 2020

| | Number applied | Number admitted | Number enrolled | |
|---|---|---|---|---|
| | | | Full-time | Part-time |
| Total | 8,682 | 5,558 | 1,014 | 1 |
| Men | 3,422 | 2,197 | 403 | 0 |
| Women | 5,260 | 3,361 | 611 | 1 |

## Student Charges

### Cost of attendance for full-time, first-time, degree/certificate-seeking undergraduates: Academic year 2020-21

| | |
|---|---|
| Published tuition and required fees | $43,018 |
| Books and supplies | $1,200 |
| On-campus room and board | $11,600 |
| On-campus other expenses | $2,800 |
| Off-campus (not with family) room and board | $11,600 |
| Off-campus (not with family) other expenses | $2,800 |
| Off-campus (with family) other expenses | $2,600 |
| **Total Cost** | |
| On-campus | $58,618 |
| Off-campus (not with family) | $58,618 |

Off-campus (with family)                                $46,616

## Typical tuition and required fees for full-time students: Academic year 2020-21

| Level of student | Tuition and required fees |
|---|---|
| Undergraduate | $43,018 |
| Graduate | $18,528 |
| Doctor's professional practice | |
| Dentistry | |
| Medicine | $62,096 |
| Pharmacy | $40,005 |
| Law | $43,146 |

## Student Financial Aid

### Student Financial Aid, 2019-20

| | Percent receiving aid | Average amount of aid received |
|---|---|---|
| **All undergraduate students** | | |
| Any grant or scholarship aid | 91% | $22,484 |
| Pell grants | 12% | $4,353 |
| Federal student loans | 47% | $6,732 |
| **Full-time, first-time, degree/certificate-seeking undergraduate students** | | |
| Any student financial aid | 100% | |
| Grants or scholarship aid | 100% | $24,071 |
| Federal grants | 12% | $6,073 |
| Pell grants | 12% | $4,526 |
| Other federal grants | 6% | $3,300 |
| State or local grants and scholarships | 3% | $3,032 |
| Institutional grants and scholarships | 100% | $23,260 |
| Student loan aid | 53% | $9,449 |
| Federal student loans | 52% | $5,202 |
| Other student loans | 32% | $7,217 |

## Net Price

### Average net price of attendance for full-time, first-time, degree/certificate-seeking undergraduate students who were awarded grant or scholarship aid: 2017-18 - 2019-20



### Average net price of attendance for full-time, first-time, degree/certificate-seeking undergraduate students who were awarded Title IV aid by income: 2017-18 - 2019-20

| Income | 2017-18 | 2018-19 | 2019-20 |
|---|---|---|---|
| $0 - $30,000 | $25,429 | $24,458 | $23,398 |
| $30,001 - $48,000 | $23,949 | $28,108 | $24,655 |

| | | | |
|---|---|---|---|
| $48,001 - $75,000 | $25,875 | $26,983 | $27,914 |
| $75,001 - $110,000 | $29,321 | $30,636 | $29,805 |
| $110,001 and more | $33,152 | $33,821 | $34,110 |

## Enrollment

### Unduplicated 12-month headcount and total FTE, by student level: 2019-20



### Enrollment by gender, student level, and full- and part-time status: Fall 2020

| | Total | Men | Women |
|---|---|---|---|
| All students | 8,770 | 3,531 | 5,239 |
| Undergraduate | 4,458 | 1,826 | 2,632 |
| Degree/certificate seeking | 4,445 | 1,814 | 2,631 |
| First-time | 1,015 | 403 | 612 |
| Transfer-ins | 183 | 66 | 117 |
| Continuing | 3,247 | 1,345 | 1,902 |
| Nondegree/certificate seeking | 13 | 12 | 1 |
| Graduate | 4,312 | 1,705 | 2,607 |
| | | | |
| Full-time students | 7,261 | 2,964 | 4,297 |
| Undergraduate | 4,330 | 1,761 | 2,569 |
| Degree/certificate seeking | 4,330 | 1,761 | 2,569 |
| First-time | 1,014 | 403 | 611 |
| Transfer-ins | 159 | 52 | 107 |
| Continuing | 3,157 | 1,306 | 1,851 |
| Graduate | 2,931 | 1,203 | 1,728 |
| | | | |
| Part-time students | 1,509 | 567 | 942 |
| Undergraduate | 128 | 65 | 63 |
| Degree/certificate seeking | 115 | 53 | 62 |
| First-time | 1 | 0 | 1 |
| Transfer-ins | 24 | 14 | 10 |
| Continuing | 90 | 39 | 51 |
| Nondegree/certificate seeking | 13 | 12 | 1 |
| Graduate | 1,381 | 502 | 879 |

### Percent of all students enrolled, by race/ethnicity: Fall 2020



Enrollment by race/ethnicity

## Percent of all students enrolled, by age: Fall 2020



Undergraduate   Graduate

## Enrollment by distance education: Fall 2020



Undergraduate   Graduate

## Residence of first-time degree/certificate-seeking undergraduates: Fall 2020



## Completions

**Number of degrees and certificates awarded, by level and race/ethnicity and gender: July 1, 2019 - June 30, 2020**

**Total**

| Race/ethnicity and Gender | Certificates Below Bachelor's | Certificates Above Bachelor's | Associate's | Bachelor's | Master's | Doctor's research/ scholarship | Doctor's professional practice | Doctor's other |
|---|---|---|---|---|---|---|---|---|
| Grand total | 3 | 196 | 0 | 1,075 | 470 | 52 | 719 | 0 |
| American Indian or Alaska Native | 0 | 0 | 0 | 4 | 8 | 0 | 5 | 0 |
| Asian | 0 | 7 | 0 | 88 | 22 | 1 | 77 | 0 |
| Black or African American | 0 | 11 | 0 | 26 | 14 | 4 | 21 | 0 |
| Hispanic or Latino | 0 | 17 | 0 | 63 | 24 | 5 | 44 | 0 |
| Native Hawaiian or Other Pacific Islander | 0 | 0 | 0 | 3 | 0 | 0 | 1 | 0 |
| White | 3 | 147 | 0 | 783 | 336 | 33 | 526 | 0 |
| Two or more races | 0 | 2 | 0 | 56 | 13 | 2 | 33 | 0 |
| Race/ethnicity unknown | 0 | 4 | 0 | 24 | 16 | 2 | 6 | 0 |
| Nonresident alien | 0 | 8 | 0 | 28 | 37 | 5 | 6 | 0 |

**Men**

| Race/ethnicity and Gender | Certificates Below Bachelor's | Certificates Above Bachelor's | Associate's | Bachelor's | Master's | Doctor's research/ scholarship | Doctor's professional practice | Doctor's other |
|---|---|---|---|---|---|---|---|---|
| Grand total | 1 | 65 | 0 | 448 | 201 | 28 | 270 | 0 |
| American Indian or Alaska Native | 0 | 0 | 0 | 4 | 1 | 0 | 2 | 0 |
| Asian | 0 | 2 | 0 | 35 | 7 | 1 | 33 | 0 |
| Black or African American | 0 | 4 | 0 | 12 | 6 | 3 | 9 | 0 |
| Hispanic or Latino | 0 | 8 | 0 | 26 | 8 | 5 | 19 | 0 |
| Native Hawaiian or Other Pacific Islander | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 |
| White | 1 | 45 | 0 | 314 | 150 | 16 | 189 | 0 |
| Two or more races | 0 | 0 | 0 | 29 | 5 | 1 | 14 | 0 |
| Race/ethnicity unknown | 0 | 1 | 0 | 9 | 10 | 2 | 1 | 0 |
| Nonresident alien | 0 | 5 | 0 | 18 | 14 | 0 | 3 | 0 |

**Women**

| Race/ethnicity and Gender | Certificates Below Bachelor's | Certificates Above Bachelor's | Associate's | Bachelor's | Master's | Doctor's research/ scholarship | Doctor's professional practice | Doctor's other |
|---|---|---|---|---|---|---|---|---|
| Grand total | 2 | 131 | 0 | 627 | 269 | 24 | 449 | 0 |
| American Indian or Alaska Native | 0 | 0 | 0 | 0 | 7 | 0 | 3 | 0 |
| Asian | 0 | 5 | 0 | 53 | 15 | 0 | 44 | 0 |
| Black or African American | 0 | 7 | 0 | 14 | 8 | 1 | 12 | 0 |
| Hispanic or Latino | 0 | 9 | 0 | 37 | 16 | 0 | 25 | 0 |
| Native Hawaiian or Other Pacific Islander | 0 | 0 | 0 | 2 | 0 | 0 | 1 | 0 |
| White | 2 | 102 | 0 | 469 | 186 | 17 | 337 | 0 |
| Two or more races | 0 | 2 | 0 | 27 | 8 | 1 | 19 | 0 |
| Race/ethnicity unknown | 0 | 3 | 0 | 15 | 6 | 0 | 5 | 0 |

Nonresident alien   6   0   10   23   3   3   0

## Number of degrees and certificates awarded, by level and program: July 1, 2019 - June 30, 2020

| Program | Certificates Below Bachelor's | Certificates Above Bachelor's | Associate's | Bachelor's | Master's | Doctor's research/ scholarship | Doctor's professional practice | Doctor's other |
|---|---|---|---|---|---|---|---|---|
| Grand total | 3 | 196 | 0 | 1,075 | 470 | 52 | 719 | - |
| Natural Resources and Conservation | - | - | - | 7 | - | - | - | - |
| Area, Ethnic, Cultural, Gender, and Group Studies | - | - | - | 0 | 0 | - | - | - |
| Communication, Journalism, and Related Programs | 0 | - | 0 | 28 | - | - | - | - |
| Computer and Information Sciences and Support Services | 0 | 0 | 0 | 14 | 0 | - | - | - |
| Education | - | 94 | - | 16 | 113 | 35 | - | - |
| Engineering/Engineering-related Technologies/Technicians | - | - | - | 5 | - | - | - | - |
| Foreign Languages, Literatures, and Linguistics | - | - | - | 12 | - | - | - | - |
| Legal Professions and Studies | - | - | - | 1 | - | - | 96 | - |
| English Language and Literature/Letters | 0 | 1 | - | 10 | 12 | - | - | - |
| Liberal Arts and Sciences, General Studies and Humanities | - | - | - | - | 0 | - | - | - |
| Biological and Biomedical Sciences | - | - | - | 181 | 9 | 8 | - | - |
| Mathematics and Statistics | 0 | - | 0 | 5 | - | - | - | - |
| Multi/Interdisciplinary Studies | - | 5 | - | 11 | 15 | - | - | - |
| Philosophy and Religious Studies | - | - | - | 5 | - | - | - | - |
| Theology and Religious Vocations | - | 25 | 0 | 4 | 19 | - | - | - |
| Physical Sciences | - | - | - | 30 | 5 | - | - | - |
| Psychology | 0 | - | - | 69 | - | - | - | - |
| Public Administration and Social Service Professions | - | - | - | 6 | 9 | - | - | - |
| Social Sciences | - | 0 | - | 63 | 7 | - | - | - |
| Visual and Performing Arts | - | - | - | 14 | - | - | - | - |
| Health Professions and Related Programs | 0 | 54 | 0 | 342 | 93 | 1 | 623 | - |
| Business, Management, Marketing, and Related Support Services | 3 | 17 | - | 240 | 188 | 8 | - | - |
| History | - | - | - | 12 | - | - | - | - |

## Retention and Graduation

### First to second year retention rates of first-time bachelor's degree-seeking undergraduates: 2019 fall cohort



### Bachelor's degree graduation rates of full-time, first-time, bachelor's degree-seeking undergraduates within 4 years, 6 years, and 8 years: 2012 cohort



## Graduation rates of full-time, first-time, degree/certificate-seeking undergraduates within 150% of normal time to program completion, by gender and race/ethnicity and transfer out-rate: 2014 cohort

|  | Rate |
|---|---|
| **Overall graduation rates** | |
| Total | 82% |
| Men | 78% |
| Women | 85% |
| American Indian or Alaska Native | 75% |
| Asian | 80% |
| Black or African American | 68% |
| Hispanic or Latino | 71% |
| Native Hawaiian or Other Pacific Islander | 100% |
| White | 84% |
| Two or more races | 78% |
| Race/ethnicity unknown | 60% |
| Nonresident alien | 67% |
| **Transfer out-rate** | 7% |

## Graduation rates of full-time, first-time, degree/certificate-seeking undergraduates within 150% of normal time to program completion, by Title IV aid status: 2014 cohort



*Graduation rates are based on the student's completion status as of August 31, 2020.*

## Outcome Measures

## Award and enrollment rates of degree/certificate-seeking undergraduate students who entered the institution in 2012-13, by cohort



**Award and enrollment rates of degree/certificate-seeking undergraduate students who entered the institution in 2012-13, by Pell status and cohort**

**Students receiving Pell Grants**



**Students not receiving Pell Grants**



**Percent of full-time, first-time entering students receiving an award at four, six, and eight years after entry, by type of award and Pell status**

4 Years after entry
6 Years after entry
8 Years after entry

# Rounds to zero.

**Percent of part-time, first-time entering students receiving an award at four, six, and eight years after entry, by type of award and Pell status**

4 Years after entry
6 Years after entry
8 Years after entry



**Percent of full-time, non-first-time entering students receiving an award at four, six, and eight years after entry, by type of award and Pell status**

4 Years after entry
6 Years after entry
8 Years after entry



**Percent of part-time, non-first-time entering students receiving an award at four, six, and eight years after entry, by type of award and Pell status**

4 Years after entry
6 Years after entry
8 Years after entry



*Award and enrollment status are based on the student's completion status as of August 31, 2020.*

## Finance

### Percent distribution of core revenues, by source: Fiscal year 2020



### Core revenues per FTE enrollment, by source: Fiscal year 2020

| | |
|---|---:|
| Tuition and fees | $28,538 |
| Government grants and contracts | $1,887 |
| Private gifts, grants, and contracts | $4,658 |
| Investment return | $-696 |
| Other core revenues | $6,570 |

### Percent distribution of core expenses, by function: Fiscal year 2020



## Core expenses per FTE enrollment, by function: Fiscal year 2020

| | |
|---|---|
| Instruction | $15,985 |
| Research | $1,895 |
| Public service | $326 |
| Academic support | $9,078 |
| Student services | $3,241 |
| Institutional support | $4,448 |
| Other core expenses | $141 |

## Human Resources

### Number of full- and part-time staff and graduate assistants, by primary occupational category: Fall 2020

| Occupational category | Total | Full-time | Part-time |
|---|---|---|---|
| **All staff** | 2,234 | 1,888 | 346 |
| Instructional Staff | 944 | 647 | 297 |
| Research | 17 | 17 | 0 |
| Public Service | 0 | 0 | 0 |
| Librarians, Curators, and Archivists | 35 | 35 | 0 |
|    Archivists, Curators, and Museum Technicians | 0 | 0 | 0 |
|    Librarians | 20 | 20 | 0 |
|    Library Technicians | 15 | 15 | 0 |
| Student and Academic Affairs and Other Education Services | 15 | 15 | 0 |
| Management | 192 | 189 | 3 |
| Business and Financial Operations | 305 | 296 | 9 |
| Computer, Engineering, and Science | 98 | 98 | 0 |
| Community Service, Legal, Arts, and Media | 90 | 81 | 9 |
| Healthcare Practitioners and Technical | 109 | 103 | 6 |
| Service Occupations | 164 | 158 | 6 |
| Sales and Related Occupations | 8 | 8 | 0 |
| Office and Administrative Support | 229 | 220 | 9 |
| Natural Resources, Construction, and Maintenance | 20 | 18 | 2 |
| Production, Transportation, and Material Moving | 8 | 3 | 5 |
| **Graduate Assistants** | - | - | 65 |
| Graduate Assistants Teaching | - | - | 25 |
| Graduate Assistants Research | - | - | 22 |
| All Other | - | - | 18 |

### Number of full-time instructional, research, and public service staff, by tenure status: Fall 2020

| | Total | Instructional Staff | Research | Public Service |
|---|---|---|---|---|
| Total | 664 | 647 | 17 | 0 |
| With faculty status | 647 | 647 | 0 | 0 |

| | | | |
|---|---|---|---|
| Tenured | 539 | 539 | 0 | 0 |
| On tenure track | 127 | 127 | 0 | 0 |
| Not on tenure track | 181 | 181 | 0 | 0 |
|    Multi-year contract | 0 | 0 | 0 | 0 |
|    Indefinite contract | 0 | 0 | 0 | 0 |
|    Annual contract | 181 | 181 | 0 | 0 |
|    Less-than annual contract | 0 | 0 | 0 | 0 |
| Without faculty status | 17 | 0 | 17 | 0 |

**Average salaries of full-time instuctional nonmedical staff equated to 9-months worked, by academic rank and gender: Academic year 2020-21**



## Academic Libraries

**Library collection by material type: Fiscal year 2020**



**Percent distribution of library expenses, by function: Fiscal year 2020**



EXHIBIT J

# National Center for Education Statistics

## Adjusted 9-month average salary by sector of institution

| Fall | Administrative unit only | Public, 4-year or above | Private not-for-profit, 4-year or above | Private for-profit, 4-year or above | Public, 2-year | Private not-for-profit, 2-year | Private for-profit, 2-year | Public, less-than 2-year | Private not-for-profit, less-than 2-year | Private for-profit, less-than 2-year |
|---|---|---|---|---|---|---|---|---|---|---|
| 2020 | $74567 | $90605 | $94544 | $55268 | $67588 | $48911 | $43427 | N/A | N/A | N/A |
| 2019 | $86740 | $89541 | $93825 | $53340 | $66432 | $44678 | $42248 | N/A | N/A | N/A |
| 2018 | $74940 | $87778 | $91825 | $52733 | $65180 | $44307 | $40078 | N/A | N/A | N/A |
| 2017 | $74008 | $86043 | $89669 | $51476 | $63420 | $43095 | $40330 | N/A | N/A | N/A |
| 2016 | $80852 | $84029 | $87881 | $50469 | $62697 | $45203 | $38940 | N/A | N/A | N/A |

This table presents data collected from Title IV degree-granting institutions in the United States.

Full-time instructional staff includes those on 9-, 10-, 11-, or 12-month contracts.  Total salary outlays for full-time instructional staff on 10-, 11-, and 12-month contracts were adjusted to 9-month outlays by dividing the outlay for the longer contracts by their length and multiplying the result by 9. The "equated" outlays were then added to the outlays for 9-month staff, and the resulting sum was then divided by the total number of staff to determine an average salary. Salaries for staff on less-than-9-month contracts were not collected.

Full-time instructional staff from administrative offices are included.

SOURCE: U.S. Department of Education, National Center for Education Statistics, Integrated Postsecondary Education Data System (IPEDS), Human Resources component final data (fall 2016 - 2019) and provisional data (fall 2020).